**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **JOSLYNN TERRELL, Individually and** | § | |
| **as Representative of the Estate of** | § | |
| **JAMAAL R. VALENTINE, Deceased;** | § | |
| **ANGELA BUTLER, as next friend** | § | |
| **of J.V. and JA.V., Minors; and CRYSTAL** | § | |
| **TRUITT, as next friend of S.M., a Minor** | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:11-cv-229** |
| | § | |
| **CITY OF LA MARQUE, TEXAS;** | § | |
| **FORMER CHIEF RICHARD PRICE;** | § | |
| **RICHARD GARCIA; FOREST** | § | |
| **GANDY; MIKE KELEMAN; and** | § | |
| **TASER INTERNATIONAL, INC.** | § | |
| **Defendants** | § | |

**<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW PLAINTIFFS, JOSLYNN TERRELL, Individually and as Representative

of the Estate of JAMAAL R. VALENTINE, Deceased; ANGELA BUTLER, as next friend of

J.V. and JA.V., Minors; and CRYSTAL TRUITT, as next friend of S.M., a Minor, who file this,

their First Amended Complaint.   Plaintiffs complain of Defendants, the CITY OF LA

MARQUE, TEXAS; FORMER CHIEF RICHARD PRICE; RICHARD GARCIA; FOREST

GANDY; MIKE KELEMAN; and TASER INTERNATIONAL, INC., and for causes of action

would show the Court the following:

**A.  <u>PRELIMINARY STATEMENT</u>**

1.      This is a civil action arising under 42 U.S.C. § 1983 and the United States

Constitution to redress the deprivation by the Defendants, acting under color of state law, of

certain rights, privileges, and immunities secured to Jamaal Valentine, by the United States Constitution.

2.      Plaintiffs seek compensatory damages together with reasonable attorney's fees as authorized by 42 U.S.C. § 1988.

## B. PARTIES

3.      At all times relevant to this action, Decedent, JAMAAL R. VALENTINE, was a citizen of the United States of America and the State of Texas.

4.      Plaintiff, JOSLYNN TERRELL, Individually and as Representative of the Estate of JAMAAL R. VALENTINE, Deceased, (hereinafter referred to as "Terrell"), an individual, is a citizen of the State of Texas.

5.      Plaintiff, ANGELA BUTLER, as next friend of J.V. and JA.V., Minors, (hereinafter referred to as "Butler"), an individual, is a citizen of the State of Texas.

6.      Plaintiff, CRYSTAL TRUITT, as next friend of S.M., a Minor, (hereinafter referred to as "Truitt"), an individual, is a citizen of the State of Texas.

7.      Defendant, CITY OF LA MARQUE, TEXAS, (hereinafter referred to as "La Marque"), is a municipality formed under and operating pursuant to the laws of the State of Texas.  La Marque has been served with process of service and made an appearance herein.  It is La Marque's responsibility to promulgate and implement policies and procedures prohibiting the use of excessive force in violation of minimum constitutional and statutory requirements.  Further, it is also La Marque's responsibility to hire, fire, discipline, train, and supervise the officers of its police department.  Finally, it is La Marque's responsibility to refrain from hiring, retaining, or allowing officers to serve who have a known propensity for misconduct and abuse of citizens, including the use of force that is grossly disproportionate to the need for same.

8.      Defendant, FORMER CHIEF RICHARD PRICE, (hereinafter referred to as "Price"), an individual, has been served with process of service and made an appearance herein. At all times material to this suit Price was the Chief of Police of the La Marque Police Department.  It was Price's responsibility to promulgate and implement policies and procedures prohibiting the use of excessive force in violation of minimum constitutional and statutory requirements.   Further, it was also Price's responsibility to hire, fire, discipline, train, and supervise La Marque police officers because he was the police chief of the La Marque Police Department.  Finally, it was Price's responsibility to refrain from hiring, retaining, or allowing officers to serve who have a known propensity for misconduct and abuse of citizens, including the use of force that is grossly disproportionate to the need for same.

9.      Defendant, RICHARD GARCIA, (hereinafter referred to as "Garcia"), an individual, has been served with process of service and filed an answer herein.  At all times material to this suit Garcia was an officer employed by the La Marque Police Department.  Each of the acts complained of arises from Garcia's conduct while acting under the color of state law, and was committed within the scope of his employment and authority with the La Marque Police Department.

10.     Defendant, FOREST GANDY, (hereinafter referred to as "Gandy"), an individual, has been served with process of service and filed an answer herein.  At all times material to this suit Gandy was an officer employed by the La Marque Police Department.  Each of the acts complained of arises from Gandy's conduct while acting under the color of state law, and was committed within the scope of his employment and authority with the La Marque Police Department.

11.     Defendant, MIKE KELEMAN, (hereinafter referred to as "Keleman") an individual, has been served with process of service and filed an answer herein.  At all times material to this suit Keleman was an officer employed by the La Marque Police Department.  Each of the acts complained of arises from Keleman's conduct while acting under the color of state law, and was committed within the scope of his employment and authority with the La Marque Police Department.

12.     Defendant, TASER INTERNATIONAL, INC., (hereinafter referred to as "Taser"), a corporation formed under and operating pursuant to Delaware law, maintains its principal place of business in the State of Arizona.  Taser has been served with process of service and filed an answer herein.

## C.  JURISDICTION AND VENUE

13.     The Court has jurisdiction over Plaintiffs' constitutional claims for which redress is provided by 42 U.S.C. § 1983 is conferred on this Court by 28 U.S.C. § 1343(a)(3).  Federal question jurisdiction is also conferred on this Court by 28 U.S.C. § 1331 because this action arises under the United States Constitution.

14.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims and/or parties.

15.     Plaintiffs also bring non-§ 1983 claims against La Marque, Price, Garcia, Gandy, and Keleman pursuant to the Texas Tort Claims Act.  TEX. CIV. PRAC. & REM. CODE § 101.001, *et seq.*  The Court has subject matter jurisdiction over these claims because the Tort Claims Act provides a limited waiver of sovereign immunity that applies to the facts of this case, as set forth more fully herein.

16.    No exception to the waiver of immunity applies to reinstate La Marque's, Price's, Garcia's, Gandy's, and Keleman's governmental immunity for Plaintiffs' non-§ 1983 claims.

17.    Based upon information and belief Plaintiffs' prior attorney gave La Marque and Price notice within the time period prescribed by the Texas Tort Claims Act.  TEX. CIV. PRAC. & REM. CODE § 101.101(a).

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because all or a substantial portion of the events and omissions from which this lawsuit arises occurred within the geographical boundaries of the Southern District of Texas.

## D.  AGENCY / *RESPONDEAT SUPERIOR*

19.    Whenever it is alleged in this Complaint that any Defendant did any act or thing, it is meant that the Defendant's agents, servants, employees, parent agents, ostensible agents, agents by estoppel, employees, and/or representatives did such act or thing, and at the time any such act or thing was done it was done with the Defendant's authorization or was done in the normal or routine course of agency or employment with Defendant.

## E.  FACTS

20.    On or about May 17, 2009, JAMAAL R. VALENTINE ("Decedent"), an African-American male, began complaining of chest pains and went outside to get some air around 9:00 p.m.  Mr. Valentine thought that he was having a heart attack so he flagged down a passing motorist, Keith Pope, to ask for assistance.  Pope called 911 and told the 911 operator that Mr. Valentine needed medical attention.  Pope remained with Mr. Valentine after calling 911.

21.    Instead of emergency medical personnel, three La Marque police officers, Defendants Garcia, Gandy and Keleman, arrived on the scene.  These officers were or should have been aware from the 911 call made by Pope that Mr. Valentine was in need of medical

attention.  Yet, immediately upon their arrival, and without probable cause or due reason, these officers drew their weapons and aggressively instructed Mr. Valentine to put his hands behind his back, completely disregarding Mr. Valentine's need for medical attention.  The officers had no reason to suspect that Mr. Valentine had broken any law to justify their immediate decision to try to subdue and place him in custody.

22.     Confused and in need of medical treatment, Mr. Valentine still managed to submit to the officers' authority by walking toward the police cars and placing his hands on one of the cars.

23.     Thereafter, while Mr. Valentine was still fully submitting to the officers' authority by keeping his hands in plain sight on the hood of the officers' car, and not posing any threat to himself or anyone else, one of the officers shot Mr. Valentine with his Taser gun.  The other two officers then violently tackled Mr. Valentine and handcuffed him.  These officers struck him several times with their fists, batons, and flashlights.  Mr. Valentine was quickly handcuffed by his wrists and ankles, while all three officers remained on top of him.  His wrists and ankles were then strapped together and he was "hog-tied."   In this manner, Defendants Garcia, Gandy and Keleman seized Jamaal R. Valentine, acting under color of law insofar as they were clothed with the authority of state law.  All of these actions were taken without probable cause or due reason.

24.     During the beating, Mr. Valentine repeatedly begged for his life.  He cried out for help.  He also repeatedly begged the officers, saying to them, "Please don't kill me, I have kids."  Still, the excessive and unreasonable behavior of these officers continued.  At one point in the attack, one of the officers placed a strap around Mr. Valentine's neck and pushed his face into the ground.  In addition, Mr. Valentine was then shocked again with the Taser.  All the while, the officers were yelling to Mr. Valentine to "stop resisting" though the physical assaults on him and

their retrains confirmed what eyewitnesses readily observed: Mr. Valentine was barely moving, and certainly was not "resisting" the officers in any way.

25.     At some point during the attack, one of the officers violently struck Mr. Valentine in the head with his flashlight.  This blow to Mr. Valentine's head opened a significant gash in his scalp from which he was bleeding profusely.  Finally, the officers fired another shot that hit Mr. Valentine from the Taser gun after which they apparently stopped their assault on Mr. Valentine.

26.     The attack on Mr. Valentine was witnessed by a number of different persons.  Not a single witness saw Mr. Valentine as a threat to the officers or anyone else.  Not a single witness saw Mr. Valentine reach for the officers' weapons or otherwise even fight with the officers.  No witness saw Mr. Valentine try to escape or resist arrest in any way.

27.     Mr. Valentine was left bleeding and struggling for breath for an unreasonable period of time, perhaps as long as thirty minutes, after all of the beatings that he suffered at the hands of the three officers.  Furthermore, when the ambulance finally arrived, the paramedics quickly looked at Mr. Valentine, but they did not immediately render aid.  Instead, they left him on the ground while they talked with officers and helped them clean the blood off of themselves before they subsequently loaded Mr. Valentine into the ambulance perhaps twenty minutes after they arrived.

28.     By their acts and omissions, Defendants Garcia, Gandy and Keleman engaged in conduct that evinced a wanton disregard for Mr. Valentine's serious medical needs.  They ignored a substantial risk that he would need, but would be unable to receive, proper medical care en route to the hospital.

29.     On his way to the hospital in Houston, Mr. Valentine went into cardiac arrest and the paramedics then decided to reroute him to Mainland Medical Center in Texas City.  Mr. Valentine was pronounced dead at Mainland Medical Center shortly after his arrival as a result of the injuries he received as a result of the assault at the hands of Defendants Garcia, Gandy and Keleman.  As a result, Decedent's surviving mother and children seek damages caused by and arising from his death.

### F.  COUNT 1 – VIOLATION OF 42 U.S.C. § 1983 BY GARCIA, GANDY AND KELEMAN

30.     Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 - 29 as if fully set forth herein.

31.     Defendants, Garcia, Gandy and Keleman acting under the color of State law deprived Mr. Valentine of his rights, privileges, and immunities secured under the Constitution.

### G.  COUNT 2 – VIOLATION OF 42 U.S.C. § 1983 BY LA MARQUE AND/OR PRICE

32.     Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 - 31 as if fully set forth herein.

33.     Defendants, La Marque and Price, had a duty to properly and thoroughly screen potential officers and/or deputies to determine whether said deputies had propensities for violence or insubordination.  Although La Marque and Price had such a duty, they failed to perform adequate inquiries into the backgrounds of any of the officers and/or deputies who participated in the assault of Jamaal R. Valentine.  Mr. Valentine's assault and death is but one incident in a pattern of incidents in which minority citizens, including African Americans, were subjected to excessive force by La Marque's officers but which were ignored and/or concealed from the public by La Marque and Price.  La Marque's and Price's failure to inquire into the

backgrounds of any of the officers who participated in the assault of Mr. Valentine were a producing and/or proximate cause of Mr. Valentine's assault and death.

34.     The use of excessive and objectively unreasonable force by La Marque police officers, Garcia, Gandy and Keleman as set out herein above complied with the deficient actual policies, procedures, practices, and customs of the La Marque and Price, which tolerate the use of excessive force by their officers.   La Marque and Price's deliberate indifference to and conscious disregard of United States citizens' constitutional rights proximately caused La Marque and Price's deficient actual policies, procedures, practices, and customs.   Specifically:

A.      The conduct of the officers which forms the basis of these claims is part of a larger policy, pattern, custom, and practice of the La Marque Police Department to deprive minority citizens, including African Americans, in La Marque of their rights by committing, condoning, ratifying, and approving of the violation of civil rights under color of law and abuse of authority.

B.      La Marque and Price knew that the culture of the La Marque Police Department promoted officers' use of excessive force, violation of civil rights, racism and abuse toward and false imprisonment of minority citizens.  La Marque and Price knew this culture caused their officers to use excessive force, act deliberately indifferent to the medical needs of injured parties within their custody, and inflict summary punishment on minority citizens without due process.

C.      Although La Marque and Price knew about this culture, they took no steps to stop this type of conduct.  Rather, La Marque and Price ratified these violations by knowingly refusing to take corrective action, elevating these violations to the official policies, procedures, practices, and customs of the La Marque Police Department.

La Marque and Prices constitutionally deficient policies, procedures, practices, or customs, were a producing and/or proximate cause of Mr. Valentine's assault and death, which was one in a pattern of similar constitutional violations.

35.     Pleading further and in the alternative, La Marque and Price breached their duty to provide their officers with adequate supervision.  The grossly inadequate supervision resulted from and was caused by La Marque and Price's deliberate indifference to Mr. Valentine's right

not to be subjected to excessive force.  Mr. Valentine's assault and death is but one incident in a pattern of incidents in which minority citizens were subjected to excessive force by La Marque Police Officers but which were ignored and/or concealed from the public by La Marque and Price.  Further, Garcia, Gandy and Keleman, who participated in the assault of Mr. Valentine received absolutely no supervision from La Marque and Price on the occasion in question.  Finally, La Marque and Price's grossly inadequate supervision of Garcia, Gandy and Keleman, who participated in the assault of Mr. Valentine is a producing and proximate cause of the unwarranted use of force on, injuries to, and death of Mr. Valentine of which Plaintiffs complain.

36.     Pleading further and in the alternative, La Marque and Price breached their duty to provide their officers with adequate training.  The grossly inadequate training resulted from and was caused by La Marque and Price's deliberate indifference to Mr. Valentine's right not to be subjected to excessive force.  Mr. Valentine's assault and death is but one incident in a pattern of incidents in which minority citizens were subjected to excessive force by La Marque Police Department officers but which were ignored and/or concealed from the public by La Marque and Price.  Further, La Marque and Price's grossly inadequate training of Garcia, Gandy and Keleman, who participated in the assault of Mr. Valentine, is a producing and proximate cause of the unwarranted use of force on, injuries to, and death of Mr. Valentine of which Plaintiffs complain.

## H.  COUNT 3 – TEXAS TORT CLAIMS ACT VIOLATIONS BY LA MARQUE

37.     Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 - 36 as if fully set forth herein.

38.     Defendant, La Marque employed Price, Garcia, Gandy and Keleman at all times relevant to this lawsuit.

39.     Garcia, Gandy and Keleman, officers of La Marque, made physical contact with Mr. Valentine's person, as described herein.  Moreover, La Marque's officers, Garcia, Gandy and Keleman, caused objects of tangible personal property, to make contact with Mr. Valentine's person, specifically, Taser devices, straps, batons and/or flashlights as described herein.

40.     The officers proximately caused Jamaal R. Valentine's injuries and death when they deployed Taser devices and/or flashlights, items of tangible personal property, on Mr. Valentine's person.

41.     The actions of Garcia, Gandy and Keleman were taken with conscious indifference or reckless disregard for the safety of Mr. Valentine.  La Marque recklessly failed to select, train, and supervise their officers to prevent the assault on, injuries to, and death of Jamaal R. Valentine.  Garcia, Gandy and Keleman, employees of La Marque and/or Price would be personally liable to Mr. Valentine under Texas law.

42.     The actions of Defendants proximately caused injuries to Mr. Valentine which resulted in his untimely death.  Mr. Valentine's injuries and death resulted in damages as described herein.

## I.  COUNT 4 – STRICT PRODUCTS LIABILITY OF TASER

43.     Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1-42 as if fully set forth herein.

44.     Plaintiffs invoke the doctrine of strict liability pursuant to Restatement (Second) of Torts § 402A and adopted by the Texas Supreme Court.

45.     The Taser device(s) that is(are) the subject of this lawsuit was(were) designed, manufactured, assembled, marketed, distributed, and sold by Defendant Taser International, Inc. and was(were) defective and unreasonably dangerous to consumers, users, and bystanders.

46.     Defendant Taser is engaged in the business of designing, manufacturing, assembling, marketing, distributing, and selling Taser devices, including the Taser device(s) that is(are) the subject of this lawsuit, to consumers in the stream of commerce.

47.     Defendant Taser intended and expected that the Taser device, so introduced and passed on in the course of trade would ultimately reach a consumer or user in the condition in which it was originally sold.

48.     The Taser device(s) that is(are) the subject of this lawsuit in fact reached officers of the La Marque Police Department in the same or substantially the same condition in which it was originally sold and when it left Taser's control.

49.     When the Taser device(s) that is(are) the subject of this lawsuit left Taser's control, and at all times relevant to this lawsuit, a safer alternative design existed that would have eliminated the risk of injury and death such as that suffered by Jamaal R. Valentine.

50.     Defendant Taser sold its devices with warnings and offered video and live instruction on the use of its products.  Whenever the term "warnings" is used herein, it is meant to include, but is not limited to, written warnings, written instructions, video training courses, and live training courses.

51.     Defendant Taser failed to provide adequate warnings to its consumers and/or users alerting them to the risk of injury or death resulting from:

      A.     repeated or prolonged use;

      B.     use on persons who are expected to be under the influence of alcohol, prescription or illegal drugs;

      C.     use on persons who are distressed, shocked, and/or fatigued; or

      D.     use on persons with head wounds.

52.     Moreover, Defendant Taser failed to accompany its products with adequate warnings or instructions on how an officer should properly respond and provide medical assistance to an individual on whom a Taser device has been deployed once the device renders him/her unconscious or unresponsive or causes respiratory arrest.

53.     Defendant Taser is liable for the Plaintiffs' damages because it exercised substantial control over the content of the warnings that accompanied the Taser device(s) that is(are) the subject of this lawsuit.  Those warnings were inadequate to prevent Jamaal R. Valentine's injuries and death.

54.     When the Taser device(s) that are the subject of this lawsuit left the control of Defendant Taser, foreseeable users, such as the officers who utilized such devices on Jamaal R. Valentine, were not and still are not likely to possess knowledge of the extent and magnitude of the risks associated with using Taser devices as designed, nor could they possibly appreciate the severity of injuries that are likely to occur.

55.     Without such knowledge, consumers and/or foreseeable users, such as the officers who utilized Taser devices on Jamaal R. Valentine would not be in a position to avoid the product's inherent dangers through the exercise of ordinary and reasonable care.  Conversely, Defendant Taser knew and was certainly in the best position to know that Taser devices, as designed, posed a tremendous risk of injury and death to individuals on whom the devices were deployed.

56.     Defendant Taser's failure to include adequate warnings with its products was a producing cause of Jamaal R. Valentine's injuries, death, and Plaintiffs' damages.

## J.  COUNT 5 – NEGLIGENCE OF TASER

57.     Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1-56 as if fully set forth herein.

58.     Defendant Taser owed its consumers and/or foreseeable users, including those on whom such devices would be deployed, a reasonable duty of care in the design, production, marketing, distribution, and sale of Taser devices.

59.     Defendant Taser ignored and/or breached that duty by its negligent acts and/or omissions which include, but are not limited to its:

> A.     Failure to design and produce a reasonably safe Taser device;
>
> B.     Design, manufacture, assembly, marketing, distribution, and sale of defective Taser devices;
>
> C.     Placing into the stream of commerce a Taser device that was defective in that it failed to be accompanied by adequate warnings;
>
> D.     Placing into the stream of commerce a Taser device that was unfit for its intended use;
>
> E.     Placing into the stream of commerce a Taser device likely to cause injury when used with ordinary care;
>
> F.     Failure to provide adequate warnings with the product after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;
>
> G.     Failure to provide adequate warnings reasonably calculated to catch the attention of a consumer and/or user or that would convey a fair indication of the nature and extent of the dangers involved in using or misusing its product;
>
> H.     Failure to adequately warn consumers and/or foreseeable users of the inherent dangers associated with the use of Taser devices;
>
> I.     Failure to actively seek information regarding incidents in which individuals on whom such devices were deployed were injured and/or killed as the result of the devices' use;

J.     Failure to protect individuals on whom it foresaw and intended such devices would be deployed;

K.    Failure to give adequate notice to consumers and users of the concealed dangers, including, but not limited to the risk of serious injury or death arising from repeated or prolonged use of the device or from the use of the device on individuals who are distressed, shocked, fatigued or under the influence of alcohol or prescription or illegal drugs;

L.     Failure to provide post-sale warnings after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

M.    Failure to take subsequent remedial measures or recall the product after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

N.    Ignoring or failing to investigate scientific, technological, and industry information regarding the risks of serious personal injury or death posed by its products;

O.    Ignoring or failing to investigate national publications relating to the risks of serious personal injury or death posed by its products;

P.     Ignoring or failing to investigate other lawsuits involving similar claims and incidents in which individuals were seriously injured or killed by Taser devices; and

Q.    Ignoring or failing to investigate other similar incidents in which individuals were seriously injured or killed by Taser devices.

60.    As an actual and proximate result of Defendant Taser's negligent acts and/or omissions, the Taser device(s) that caused Jamaal R. Valentine's injuries and death was(were) placed in the stream of commerce in a defective and unreasonably dangerous condition.

61.    As an actual and proximate result of Defendant Taser's negligent acts and/or omissions, Mr. Valentine died, causing Plaintiffs' damages as stated herein.

62.    Jamaal R. Valentine's injuries and death and the manner in which both occurred were reasonably foreseeable to Defendant Taser. Taser had actual and/or constructive knowledge from within the industry, national publications, prior lawsuits, and consumer complaints that

consumers, users, and bystanders were routinely injured and/or killed by Taser devices marketed to police departments as entirely safe.

## K.  WRONGFUL DEATH DAMAGES FOR JOSLYNN TERRELL

63.     Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1-62 as if fully set forth herein.

64.     This claim for damages resulting from the wrongful death of Jamaal R. Valentine, Decedent, is brought by Plaintiffs pursuant to Texas Civil Practice and Remedies Code Section 71.001, *et seq.*  This claim is based upon the facts and legal theories more fully set out herein.

65.     Plaintiff Joslynn Terrell is Decedent's surviving mother.

66.     Each Defendant is a person against whom Plaintiff may recover within the meaning of Texas Civil Practice & Remedies Code sections 71.002 and 71.001(2).

67.     When he died, Jamaal R. Valentine was in good health with a normal life expectancy.  Plaintiff would show that Mr. Valentine was 27 years old at the time of his tragic death and but for Defendants' action would have lived to an age of at least 71, according to the 2004 United States Life Tables.

68.     The Decedent was a loving and dutiful son and provided love, care, affection, nurture, advice, counsel, guidance, and pecuniary support all of which he would have continued to provide in the future.

69.     As a result of the wrongful death of Jamaal R. Valentine, Plaintiff suffered damages separate and apart from those Mr. Valentine suffered before he died.  Defendants' acts and/or omissions proximately caused Plaintiff's damages which include, but are not limited to:

      A.     mental anguish and grief in the past and future;

      B.     pecuniary loss in the past and future; and

C.     termination of the parent-child relationship in the past and future.

## L.  WRONGFUL DEATH DAMAGES FOR ANGELA BUTLER, as next friend of J.V. and JA.V., Minors; and and CRYSTAL TRUITT, as next friend of S.M., a Minor

70.     Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1-69 as if fully set forth herein.

71.     This claim for damages resulting from the wrongful death of Jamaal R. Valentine, Decedent, is brought by Angela Butler, as next friend of J.V. and JA.V., Minors; and Crystal Truitt, as next friend of S.M., a Minor, pursuant to Texas Civil Practice and Remedies Code Section 71.001, *et seq.*  This claim is based upon the facts and legal theories more fully set out herein.

72.     J.V., JA.V., and S.M. are the surviving children of Jamaal R. Valentine, Deceased.

73.     Each Defendant is a person against whom Plaintiffs may recover within the meaning of Texas Civil Practice & Remedies Code sections 71.002 and 71.001(2).

74.     When he died, Jamaal R. Valentine was in good health with a normal life expectancy.  Plaintiff would show that Mr. Valentine was 27 years old at the time of his tragic death and but for Defendants' action would have lived to an age of at least 71, according to the 2004 United States Life Tables..

75.     The Decedent was a loving and dutiful father and provided love, care, affection, nurture, advice, counsel, guidance, and pecuniary support, all of which he would have continued to provide in the future.

76.     As a result of the wrongful death of Jamaal R. Valentine, Plaintiffs Angela Butler, as next friend of J.V. and JA.V., Minors; and Crystal Truitt, as next friend of S.M., a Minor,

suffered damages separate and apart from those Mr. Valentine suffered before he died. Defendants' acts and/or omissions proximately caused Plaintiffs' damages which include, but are not limited to:

      A.      Mental anguish and grief in the past and future;

      B.      Loss of consortium in the past and future;

      C.      Pecuniary loss in the past and future; and

      D.      Termination of the parent-child relationship in the past and future.

## M.  SURVIVAL DAMAGES

77.      Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1-76 as if fully set forth herein.

78.      In addition to other counts which make Defendants liable to Plaintiffs under the Texas Wrongful Death Act, Defendants are liable to Joslynn Terrell in her capacity as Representative of the Estate of Jamaal R. Valentine for damages arising from injuries Mr. Valentine suffered before he died.

79.      Jamaal R. Valentine was a person who was born alive.  Joslynn Terrell is the personal representative of Mr. Valentine's estate.

80.      Before dying, the causes of action stated herein accrued to Mr. Valentine's benefit.  He could have asserted the causes of action stated herein against Defendants had he lived.

81.      As a direct and proximate result of Defendants' acts and/or omissions as stated herein, Mr. Valentine suffered fatal injuries which resulted in damages that the Estate is entitled to collect on Mr. Valentine's behalf.  Therefore, as personal representative of Mr. Valentine's

estate, Joslynn Terrell is entitled to collect compensation for damages suffered by the Estate as follows:

A.  As a direct and proximate result of Defendants' acts and/or omissions, Mr. Valentine suffered fatal injuries. He suffered excruciating and debilitating pain and agony until succumbing to his injuries. Therefore, Joslynnn Terrell seeks recovery for medical expenses incurred in the past, damages for conscious physical pain and suffering occurring in the past; and damages for mental anguish occurring in the past.

B.  Mr. Valentine was buried in a manner reasonably suited to his station in life. Therefore, Joslynn Terrell, in her capacity as Representative of Mr. Valentine's Estate, is entitled to compensation for damages in an amount equal to Mr. Valentine's funeral and burial expenses.

### N.  ATTORNEY FEES

82.  Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1-81 as if fully set forth herein.

83.  Plaintiffs request recovery from La Marque, Price, Garcia, Gandy, and Keleman of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

### O.  EXEMPLARY DAMAGES

84.  When viewed objectively from Defendants standpoint at the time of the occurrence from which this lawsuit arises, their acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

85.  Moreover, Defendants had an actual, subjective awareness of those risks and nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others.

86.  Defendants' acts and/or omissions constituted a flagrant disregard for the safety of Plaintiff.

87.  Thus, Plaintiffs are entitled to exemplary damages for the injuries and death resulting from Defendants' actions.

## P.  CONDITIONS PRECEDENT

88.    All conditions precedent have been performed or have occurred.

## Q.  PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be duly cited to appear and answer.  Plaintiffs further pray that, upon final hearing, the Court award judgment on Plaintiffs' behalf against Defendants for:

A.    Compensatory damages;

B.    Reasonable attorney's fees and costs Plaintiffs expended from the City of La Marque, Chief Randall Price, Richard Garcia, Forest Gandy, and Mike Keleman pursuant to 42 U.S.C. § 1988;

C.    Exemplary damages;

D.    Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

E.    Such other and further relief to which Plaintiffs show themselves justly entitled.

Respectfully submitted,

*/s/  John D. Sloan, Jr.*
JOHN D. SLOAN, JR.
Attorney in Charge
State Bar No. 18505100
Southern District of Texas No. 106566
jsloan@sloanfirm.com
J. RYAN FOWLER
State Bar No. 24058357
Southern District of Texas No. 1060803
rfowler@sloanfirm.com
SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM
440 Louisiana Street, 9th Floor
Houston, Texas 77002
Telephone:  (713) 236-7751
Facsimile:  (713) 236-7756

ATTORNEYS FOR PLAINTIFFS, JOSLYNN
TERRELL, INDIVIDUALLY and as
REPRESENTATIVE OF THE ESTATE OF
JAMAAL R. VALENTINE; ANGELA BUTLER,
as next friend of J V and JA V, Minors; and
CRYSTAL TRUITT, as next friend of S M, a
Minor

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 22nd day of July, 2011, I electronically filed the foregoing **Plaintiffs' First Amended Complaint** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of said filing to the following counsel of record:

William S. Helfand
Norman Ray Giles
Chamberland, Hrdlicka, White,
   Williams & Martin
1200 Smith Street, Suite 1400
Houston, Texas 77002

Douglas D. Fletcher
Keith A. Robb
Fletcher, Farley, Shipmand & Salinas, L.L.P.
8750 N. Central Expressway, Suite 1600
Dallas, Texas 75231

   /s/ John D. Sloan, Jr.
JOHN D. SLOAN, JR.
J. RYAN FOWLER